FEE PAID
$400

FILED

1 | Pritish Vora

2 | 27758 Santa Marg. Pkwy #530

3 | Mission Viejo, CA  92691

4 | 949-292-8359

5 | Plaintiff in Pro Per

2019 FEB 14  PM 3:21

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY___IAW___

6

7

8

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  Pritish Vora, | Case No.: **SACV19-00302 AG (KESx)** |
| 13  Plaintiff, | **Violations of the Fair Credit** |
| 14  vs. | **Reporting Act [15 U.S.C. § 1681 et** |
| 15  EQUIFAX INFORMATION | **seq.]** |
| 16  SERVICES, LLC; EXPERIAN | **DEMAND FOR JURY TRIAL** |
| 17  INFORMATION SOLUTIONS, INC.; | |
| 18  TRANS UNION, LLC, | |
| 19  Defendants. | |

20

21 | COMES NOW, Plaintiff, Pritish Vora, ("Plaintiff") by way of Pro Se, brings forth

22 | his complaint against EQUIFAX INFORMATION SERVICES, LLC

23 | ("EQUIFAX"), EXPERIAN INFORMATION SOLUTIONS, INC.

24 | ("EXPERIAN"), and TRANS UNION, LLC ("TRANSUNION"), individually

25 | named as Defendant "EQUIFAX," "EXPERIAN," and "TRANSUNION,"

26 | respectively, and collectively named as "Defendants" for violations of the Fair

27 | Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., all parts and sub-parts

28 | that apply, and alleges herein as follows:

COMPLAINT FOR DAMAGES

## **PRELIMINARY STATEMENT**

1.      Congress passed the FCRA in 1970 with the stated intent of "prevent[ing] consumers from being unjustly damaged because of inaccurate or arbitrary information on a credit report."  To achieve that aim, the FCRA imposes on consumer reporting agencies a number of requirements concerning the creation and use of consumer reports, including that agencies "follow *reasonable procedures* to assure **maximum possible accuracy** of their reports."  (See Robins v. Spokeo, Inc. 867 F.3d 1108 (9th Cir. 2017)).  (Emphasis supplied).

2.      The use of consumer reports pursuant to the FCRA is for specified purposes, including credit transactions, licensing, consumer-initiated business transactions, and employment.  (See § 1681a(d)(1)(A)-(C); § 1681b).

3.      The FCRA expressly creates a private right of action against a consumer reporting agency for its willful or negligent violation of any duty imposed under the FCRA.  15 U.S.C. § 1681n; 15 U.S.C. § 1681o.  (See Gorman v. Wolpoff & Abramson, 584 F.3d 1147, 1154 (9th Cir. 2009) (citations omitted).

4.      Whether or not a consumer reporting agency conducted a reasonable investigation and reasonable reinvestigation is a jury question.  (See Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995).  "The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of the cases." (Guimond at 1333).

5.      Common sense dictates that a consumer reporting agency cannot conduct a reasonable "reinvestigation" until first conducting an **initial** "investigation."  The specific definition of "reinvestigation" is neither defined by Congress nor within the text of the FCRA, however it appears in many online dictionaries.   By way of example, yourdictionary.com defines the word "*reinvestigation*" as "an act or process of reinvestigating: **a repeat of an earlier investigation**."  (Emphasis added).

1

## JURISDICTION AND VENUE

2

3       6.      Jurisdiction of this court arises pursuant to section 618 of the FCRA

4   [15 U.S.C. § 1681p], and pursuant to 28 U.S.C. § 1331.

5       7.      Venue is proper in the United States District Court for the Central

6   District of California pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in

7   the County of Orange, State of California, the harm to Plaintiff occurred in this

8   District, and Defendants regularly conduct business in this District, and in the State

9   of California, therefore establishing personal jurisdiction.

10

11                                  ## PARTIES

12

13      8.      Plaintiff, Pritish Vora, a natural person, is an adult individual who

14  resides in the County of Orange, State of California.

15      9.      Plaintiff is a "person" as defined in 15 U.S.C. § 1681a(b), and is a

16  "consumer" as defined in 15 U.S.C. § 1681a(c).

17      10.     EQUIFAX is a Georgia limited liability company with its principal

18  place of business at 1550 Peachtree St. NW, Atlanta, GA  30309.

19      11.     EQUIFAX is registered with the California Secretary of State, and

20  may be served with service of process through its registered agent at The Prentice-

21  Hall Corporation System, Inc., 2710 Gateway Oaks Drive Suite 150N, Sacramento,

22  CA  95833.

23      12.     EXPERIAN is an Ohio corporation with its principal place of business

24  at 475 Anton Blvd., Costa Mesa, CA  92626.

25      13.     EXPERIAN is registered with the California Secretary of State, and

26  may be served with service of process through its registered agent at CT

27  CORPORATION SYSTEM, 818 West Seventh Street, Suite 930, Los Angeles, CA

28  90017.

COMPLAINT FOR DAMAGES

14.     TRANSUNION is a Delaware limited liability company with its principal place of business at 555 West Adams St., Chicago, IL 60661.

15.     TRANSUNION is registered with the California Secretary of State, and may be served with service of process through its registered agent at The Prentice-Hall Corporation System, Inc., 2710 Gateway Oaks Drive Suite 150N, Sacramento, CA 95833.

16.     Defendants are each a consumer reporting agency ("CRA") as defined in section 603(f) of the FCRA, 15 U.S.C. § 1681a(f).

17.     Defendants are also each a nationwide consumer reporting agency which refers to a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as defined in section 603(p) of the FCRA, 15 U.S.C. § 1681a(p).

18.     Defendants are also each a "person" which refers to "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity," as defined in section 603(b) of the FCRA, 15 U.S.C. § 1681a(b).

19.     Defendants are also each a "covered person" as defined by the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5481(6). The Consumer Financial Protection Bureau ("CFPB") has jurisdiction of covered persons under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563 and 5565, and section 621 of the FCRA, 15 U.S.C. § 1681s. (See In the Matter of: Equifax Inc. and Equifax Consumer Services LLC, CFPB CONSENT ORDER, File No. 2017-CFPB-0001 at ¶ 1). (See also In the Matter of: TransUnion Interactive, Inc., Trans Union LLC, TransUnion, CFPB CONSENT ORDER, File No. 2017-CFPB-0002 at ¶ 1). (See also In the Matter of: Experian Holdings, Inc., Experian Information Solutions, Inc., and ConsumerInfo.com, Inc., dba Experian Consumer

<u>Services</u>, CFPB CONSENT ORDER, File No. 2017-CFPB-0012 at ¶ 1).[1]

20.    EQUIFAX is a wholly-owned subsidiary of its parent, Equifax Inc., a publicly traded entity (NYSE: EFX), and shares the same corporate address with its parent.

21.    EXPERIAN is a wholly-owned subsidiary of its privately-held parent, Experian Holdings, Inc., and shares the same corporate address with its parent.

22.    EXPERIAN has an ultimate parent, Experian plc, a Dublin, Ireland based public limited company (LSE: EXPN), which has a registered address overseas in Jersey, Channel Islands.

23.    For the sake of simplicity, if "Experian Information Solutions, Inc." is the "grand baby" and "Experian plc" is the "grand daddy" then "Experian Holdings, Inc." is the "daddy" in the middle.

24.    TRANSUNION is a wholly-owned subsidiary of its parent, TransUnion Intermediate Holdings, Inc. and shares the same corporate address with its parent.

25.    TRANSUNION has an ultimate parent, TransUnion, a non-holding company and a publicly traded entity (NYSE: TRU), and <u>also shares the same corporate address</u> with its ultimate parent.

26.    For the sake of simplicity, if "Trans Union LLC" is the "grand baby" and "TransUnion" is the "grand daddy" then "TransUnion Intermediate Holdings, Inc." is the "daddy" in the middle.

27.    EQUIFAX is just a mirror-image and alter-ego of Equifax, Inc.

28.    EXPERIAN is just a mirror-image and alter-ego of Experian Holdings, Inc. and Experian plc.

29.    TRANSUNION is just a mirror-image and alter-ego of TransUnion Intermediate Holdings, Inc. and TransUnion.

---

[1]  Plaintiff respectfully requests this court to take judicial notice of all CONSENT ORDERS issued by the CFPB that have reference to defendants and their affiliated entities.

30.   By way of example, <u>publicly available documents</u> filed with the Securities Exchange Commission ("SEC") regarding EQUIFAX state as follows: "As used herein, the terms Equifax, the Company, we our and us refer to Equifax Inc., a Georgia corporation **and its consolidated subsidiaries <u>as a combined entity</u>**, except where it is clear that the terms mean only Equifax Inc." (See pg. 2, 2017 ANNUAL REPORT).[2]  (Emphasis added).

31.   By way of example, <u>publicly available documents</u> reveal that EXPERIAN is listed as part of "the Group of companies" encompassing the subsidiaries of Experian plc as **"the Company"**, whereby the description of the "business model" of Experian plc "Credit Services" states as follows: "We collect and sort data from thousands of sources, primarily on the credit a person or business has applied for in the past and how they have repaid it. **<u>We turn this information into a credit report</u>**."  The <u>competitors</u> to this model listed in the report include "Equifax" and "TransUnion." (See pg. 16, 2018 ANNUAL REPORT).[3]  (Emphasis added).

32.   By way of example, <u>publicly available documents</u> filed with the SEC regarding TRANSUNION state as follows: "Unless the context indicates otherwise, any reference to the "Company," "we," "us," and "our" refers to TransUnion **<u>and its direct and indirect subsidiaries</u>**."  (See pg. 1, 2017 ANNUAL REPORT).[4]  (Emphasis added).

33.   None of the respective parent entities is currently named as a defendant, as they are provided herein for clarity and reference for the purposes of this complaint.  The information embedded in the footnotes below with links to the respective annual reports speaks for itself.

---

[2]  https://investor.equifax.com/financial-information/annual-reports-and-proxy-statements

[3]  https://www.experianplc.com/investors/reports/

[4]  https://investors.transunion.com/financials

## STATEMENT OF FACTS

34.  Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

35.  Upon information and belief, the United States Supreme Court explained that F.R.C.P. 8(a) requires that a complaint "give the defendant fair notice of what the...claim is and the grounds upon which it rests." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

36.  Pursuant to F.R.C.P. 8(b)(2), Denials – Responding to the Substance. "A denial must fairly respond to the substance of the allegation."

37.  Pursuant to F.R.C.P. 8(b)(4), "if a party that intends in good faith to deny only part of an allegation **must admit the part that is true** and deny the rest." (Emphasis added).

38.  Defendants know (or should know) that a "consumer report" is defined pursuant to the FCRA, 15 U.S.C. § 1681a(d).

39.  Defendants know (or should know) that a "file" is defined pursuant to the FCRA, 15 U.S.C. § 15 U.S.C. § 1681a(g).

40.  Defendants know (or should know) that the term "verification" is defined pursuant to the FCRA, 15 U.S.C. § 1681a(l)(2)(A)-(B).

41.  Defendants know (or should know) that the FCRA imposes on each Nationwide Consumer Reporting Agency an obligation to provide a free file disclosure (i.e. credit report) once every twelve months to any consumer who requests it.  15 U.S.C. § 1681j.

42.  Defendants know (or should know) that Regulation V, the FCRA's implementing regulation, requires all Nationwide Consumer Reporting Agencies to operate a "centralized source" to enable consumers to obtain free annual file disclosures.  12 C.F.R. § 1022.136.

43.  Defendants know (or should know) that the centralized website for

free annual file disclosures is AnnualCreditReport.com.

44.    Defendants know (and should know) that they are the sponsors of the above listed website through an affiliate, Central Source, LLC, which runs the site.

45.    Plaintiff ordered his annual file disclosure on or around late June/early July of 2016.  Plaintiff received his report shortly thereafter.

46.    Plaintiff called Capital One Bank (USA) N.A. ("Capital One Bank") to request the applicable, true correct and complete front AND back signed copy of the original agreement copyright 1999, regarding the written terms and conditions of a credit card with an alleged balance appearing inaccurately on his report.

47.    Defendants know (or should know) the term "Bureau" is defined pursuant to the FCRA, 15 U.S.C. § 1681a(w), as the "Bureau of Consumer Financial Protection" or more commonly known as the CFPB.

48.    Defendants know (or should know) that the CFBP states the following on its web site: "If you are looking for information specific to your account, contact the bank or institution that issued your card.  **By law, the issuer must make your agreement available to you upon request**.  If you are having trouble getting your agreement, let us know by submitting a complaint."[5]

49.    Plaintiff did not receive the applicable agreement.

50.    Plaintiff disputed the accuracy of information concerning the item with Defendants pursuant to the FCRA, after already having communicated with Capital One Bank, both verbally and via certified mail.

51.    Plaintiff sent an electronic NOTICE OF DISPUTE to TRANSUNION via a third-party credit monitoring site, and to EXPERIAN and EQUIFAX via their respective web sites on or around the third week of July, 2016.

52.    Plaintiff conveyed the information to Defendants that Capital One Bank failed to verify the tradeline in dispute by way of an applicable agreement, an obvious basic requirement to furnish ANY item of information in Plaintiff's file.

---

[5] https://www.consumerfinance.gov/credit-cards/agreements/

53.    TRANSUNION sent an automated consumer dispute verification ("ACDV") to the furnisher as part of the dispute process pursuant to the FCRA, 15 U.S.C. §1681i(a), and after the completion of its reinvestigation, sent Plaintiff the results as "DELETED."

54.    EQUIFAX also sent an ACDV to the furnisher as part of the dispute process, and after the completion of its reinvestigation, sent Plaintiff the results as "DELETED."

55.    EXPERIAN also sent an ACDV to the furnisher as part of the dispute process, and after the completion of its reinvestigation, sent Plaintiff the results as "DELETED."

56.    Defendants knew (or should have known) that the item was either inaccurate, incomplete, **or could not be verified** pursuant to the FCRA, 15 U.S.C. § 1681i(a)(5), and correctly removed the item.  (Emphasis added).

57.    Defendants maintained reasonable procedures and followed the mandates of the FCRA to ensure maximum possible accuracy in Plaintiff's consumer report and credit file regarding the inaccurate item.

58.    Defendants understood that the Capital One Bank credit card account number ending in 0117 was CLOSED on August 8, 2016.

59.    Defendants understood that there was no payment due, and that Plaintiff denied that he owed any alleged debt to Capital One Bank.

60.    Defendants knew (or should have known) the basic rudimentary understanding that a liability to a bank cannot exist **absent the presence of an applicable signed agreement evincing all written terms and conditions**.  (See Thomas v. American Express 139 So. 3d 809 (Ala. Civ. Ct. App. 2013). (Emphasis supplied).

61.    Upon information and belief, Defendants, even as CRAs, need not resort to becoming tribunals to adjudicate matters **pertaining to common sense**. (Emphasis added).

62.   Defendants understood that on or around August 25, 2016, <u>Capital One Bank created a fake, fictional, imaginary credit card account number without Plaintiff's authorization, knowledge or consent, and without any applicable written cardholder agreement</u>.  Defendants understood and knew (or should have known) that Plaintiff had filed a complaint against Capital One Bank with the CFPB.

63.   Defendants understood that Capital One Bank furnished the FAKE account number on or around early October 2016, by switching a few digits from the PRIOR deleted account number, in order to furnish the false item on Plaintiff's consumer report and file.

64.   Defendants understood and knew (or should have known) that the CRAs have specific block provisions that prohibit a permanently deleted item from reappearing, pursuant to the FCRA, 15 U.S.C. § 1681i(a)(5)(B)(i).

65.   Defendants understood that the PRIOR deleted account number was a permanent deletion from the consumer report and file, not a temporary suppression.

66.   Upon information and belief, Defendants are sophisticated businesses who need not rely on hearsay or speculation.  Defendants have access to information in their possession to know (or should know) that a bank can circumvent the block provisions by creating a FAKE account number to furnish an item that was correctly disputed upon receipt of proper NOTICE and correctly deleted by Defendants, **and that is exactly what Capital One Bank did**.  (See <u>Williams v. Capital One Bank (USA), N.A. et al.</u> Case No. 5:17-cv-01216-CLS, Document 101-4, sworn testimony by Leonard A. Bennett before the House Committee on Financial Services, "Fair Credit Reporting Act: How it Functions for Consumers and the Economy," page 17 at ¶ 4).  (Emphasis added).

67.   Defendants have been sued repeatedly by the firm represented by Leonard Bennett, defendants are familiar with his sworn testimony from 2007, and know (or should know) that it speaks for itself.

68.    Plaintiff sent a NOTICE OF DISPUTE via certified mail to Defendants on October 31, 2016, disputing the inaccuracy of the false, fictional, imaginary account number being furnished by Capital One Bank (card number XXXX-XXXX-XXXX-7835), hereinafter "the alleged account."

69.    Defendants understood that ALL aspects of the alleged account were false, inaccurate, incomplete, materially misleading and/or UNVERIFIED.

70.    TRANSUNION received the NOTICE OF DISPUTE and Plaintiff's telephonic dispute, and pursuant to the mandates of the FCRA, conducted **its own internal reinvestigation**, and DELETED the item. (Emphasis added).

71.    TRANSUNION sent the results to Plaintiff via postal mail, indicating that it had completed its reinvestigation, and within the results, stated as follows, quoted verbatim, **"If an item says 'Deleted', we have removed it from your credit report and taken steps so it does not reappear."** (Emphasis added).

72.    TRANSUNION knows (and should know) that its parent, TransUnion Intermediate Holdings, Inc., is a "bank holding company" with more than a 10% stake invested into TransUnion by funds affiliated with The Goldman Sachs Group ("Goldman"), one of the largest and well-known investment banks in the world.

73.    TRANSUNION knows (and should know) that Goldman is a financial institution pursuant to the definition of the FCRA, 15 U.S.C. § 1681a(t).

74.    TRANSUNION knows (and should know) from the annual SEC filings that in 2015, Goldman's stake in TransUnion was 37.9%, or close to $400 million dollars...holy gadzukas, that's a lot of FEDERAL RESERVE NOTES!

75.    TRANSUNION knows (and should know) that its ultimate parent company's annual reports filed with the SEC also states that it is "deemed to be controlled by Goldman" and thus is subject to the "policy and provisions of the Federal Reserve and the Office of the Comptroller of the Currency."

76.    TRANSUNION understood that Plaintiff requested either the PHYSCIAL VERIFICATION of the agreement, or to DELETE the item.

77.   TRANSUNION understood being owned and controlled by a bank holding company, it was aware that Capital One Bank still had an obligation as per CFPB rules which state "by law" <u>the bank must provide the agreement</u>.

78.   TRANSUNION understood that a bank's obligation to comply with Plaintiff's demand for the applicable customer agreement was NOT forgiven.

79.   TRANSUNION maintained reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report and file, and correctly DELETED the alleged account.

80.   EXPERIAN sent the reinvestigation results to Plaintiff, claiming the item was "verified" as being "reported accurately."

81.   EQUIFAX sent the reinvestigation results to Plaintiff, also claiming that the item was "verified" as being "reported accurately."

82.   EXPERIAN and EQUIFAX understood that Plaintiff sent MULTIPLE additional "NOTICE OF DISPUTES" between December 2016 and early March 2017, via certified mail, with proof of delivery through USPS.com, demanding either the PHYSICAL VERIFICATION of the alleged account by way of the applicable agreement, or to remove the item pursuant to the FCRA.

83.   EXPERIAN knows (and should know) that each follow-up NOTICE OF DISPUTE in Plaintiff's file speaks for itself.

84.   EQUIFAX knows (and should know) that each follow-up NOTICE OF DISPUTE in Plaintiff's file speaks for itself.

85.   By way of example, EXPERIAN received a "NOTICE OF UNVERIFIED ACCOUNT" as a dispute by Plaintiff dated December 5, 2016, January 17, 2017, and again on February 27, 2017 via certified mail, respectively.

86.   By way of example, EQUIFAX received a "NOTICE OF UNVERIFIED ACCOUNT" as a dispute by Plaintiff dated December 6, 2016, January 18, 2017, and again on March 2, 2017 via certified mail, respectively.

87.   EXPERIAN sent the ACDV to the furnisher for the disputes dated

December 5, 2016, January 17, 2017 and February 27, 2017, respectively.

88.   EQUIFAX sent the ACDV to the furnisher for the disputes dated December 6, 2016, January 18, 2017 and March 2, 2017, respectively.

89.   EXPERIAN sent the results of its reinvestigation from the disputes dated December 5, 2016 and January 17, 2017, updated as "verified."

90.   EQUIFAX sent the results of its reinvestigation from the disputes dated December 6, 2016 and January 18, 2017, updated as "verified."

91.   EXPERIAN was instructed by Capital One Bank upon receipt of NOTICE OF PENDING LITIGATION dated February 27, 2017 to DELETE the item, and on March 10, 2017, the alleged account was deleted.

92.   EXPERIAN sent the results to Plaintiff via postal mail, indicating that it had completed its reinvestigation, and within the results, stated as follows, quoted verbatim, **"If an item says 'Deleted', we have removed it from your credit report and taken steps so it does not reappear."** (Emphasis added).

93.   EQUIFAX was instructed by Capital One Bank upon receipt of NOTICE OF PENDING LITIGATION dated March 2, 2017 to DELETE the item, and on March 10, 2017, the alleged account was deleted.

94.   EQUIFAX sent the results to Plaintiff via postal mail, indicating that it had completed its reinvestigation, and within the results, stated as follows, quoted verbatim, **"If an item says 'Deleted', we have removed it from your credit report and taken steps so it does not reappear."** (Emphasis added).

95.   Defendants do not explain what "steps" they take so that a permanently deleted inaccurate, incomplete or unverified item "does not reappear."

96.   Defendants understood and knew (or should have known) that there was NO physical credit card for the alleged account, NO regulation Z disclosures, NO merchant transactions, NO statements, and NO applicable card agreement.

97.   Defendants understood and knew (or should have known) that at all times relevant, Capital One Bank did NOT attempt to collect a debt from Plaintiff.

98.   On March 16, 2017, then again on April 25, 2017, and yet again on October 24, 2017, EXPERIAN willfully violated the FCRA, 15 U.S.C. § 1681b by allowing an impermissible pull to his consumer report by RESURGENT CAPITAL SERVICES, L.P. ("RESURGENT"), a collection agency.

99.   EXPERIAN knew (and should have known) that Plaintiff did NOT provide EXPERIAN permission for RESURGENT to access the consumer report or file pursuant to § 1681b, "Permissible purposes of consumer reports."

100.   EXPERIAN knew (or should have known) that credit reporting is voluntary, and a consumer must first give permission to an alleged creditor to conduct a credit review and/or credit inquiry with EXPERIAN for purposes of extending credit, employment, insurance, underwriting, or any other purpose allowed by the FCRA, pursuant to 15 U.S.C. § 1681b.

101.   EXPERIAN knows (and should know) that the improper inquiries are stored in Plaintiff's file disclosure, and that Plaintiff has copies of the reports.

102.   EXPERIAN is an alleged "data trafficker," engaged in the business of selling, brokering, bartering, reselling, exchanging, transferring, assigning or otherwise making available Plaintiff's personally identifiable information (hereinafter "PII") to third parties for a profit.

103.   EXPERIAN knows (and should know) that RESURGENT is a "debt collector" as that term is defined pursuant to the Fair Debt Collection Practices Act ("FDCPA"), [15 U.S.C. § 1692a(6)].

104.   Plaintiff called EXPERIAN towards the end of March 2017, after receiving a "collection letter" from CREDIT CONTROL, LLC, an affiliate of RESURGENT, regarding the FALSE Capital One Bank alleged account that EXPERIAN had already DELETED, and to ensure that it would not appear again.

105.   EXPERIAN assured Plaintiff that "no collection agency can put that item back on your file." EXPERIAN, through its call center agent, "Brian", instructed Plaintiff to call back if he ever saw it on his report to have it removed.

106.  Plaintiff received an alert from a credit monitoring service on or around May 10, 2017, indicating that "LVNV FUNDING, LLC" (hereinafter, "LVNV"), was the furnisher of information for a "collections" item regarding the alleged account.

107.  Defendants maintain reciprocal data sharing agreements with other CRAs, and with data furnishers through their respective subscriber agreements.

108.  EXPERIAN knew (and should have known) that once it allowed the improper access to RESURGENT of Plaintiff's PII and consumer report, it was inevitable that both TRANSUNION and EQUIFAX would <u>also</u> begin the improper <u>reporting</u> of the false "collections" item in Plaintiff's consumer report and file.

109.  Defendants knew (and should have known), that the item being furnished by LVNV through its servicing agent was FALSE, inaccurate, incomplete and/or could not be verified.

110.  Defendants **failed** to provide the required NOTICE to Plaintiff regarding the reinsertion in writing "<u>not later than 5 business days after the reinsertion</u>" pursuant to the FCRA, 15 U.S.C. § 1681i(a)(B)(ii).  (Emphasis added).

111.  Defendants negligently violated the FCRA for allowing the exact SAME Capital One Bank account number ending in 7835 to appear again.

112.  Defendants understood and knew (or should have known) that courts have held "[a]llowing inaccurate information **back onto a credit report after deleting it** because it is inaccurate **is negligent**." (See <u>Stevenson v. TRA Inc.</u>, 987 F.3d at 293 (5th Cir. 1993)).  See also (<u>Morris v. Credit Bureau of Cincinnati, Inc.</u>, 563 F.Supp at 968).  (Emphasis added).

113.  Defendants failed to conduct an <u>initial investigation</u> to maintain reasonable procedures and ensure maximum possible accuracy in Plaintiff's file.

114.  Defendants knew (or should have known) they were at all times relevant in possession or had access to objectively determinable evidence that the item being reinserted was FALSE, and that the item had already been DELETED.

115.   The furnishing of the erroneous collections account caused Plaintiff's credit score to drop from 720 to 545 once Defendants allowed the false information onto Plaintiff's consumer report and file and began reporting it, thus causing harm to Plaintiff's credit worthiness and reputation.

116.   Plaintiff sent a "NOTICE OF DISPUTE" to TRANSUNION dated May 22, August 2, September 20, and November 8, 2017, respectively.

117.   Plaintiff sent a "NOTICE OF DISPUTE" to EQUIFAX dated May 22 and July 24, 2017, respectively.

118.   Plaintiff sent a "NOTICE OF DISPUTE" to EXPERIAN dated May 22, July 17, and September 26, 2017, respectively.

119.   Defendants each received a copy of the NOTICE via USPS.com delivery tracking, and know (or should know) that each NOTICE speaks for itself.

120.   Defendants knew (and should have known) that the alleged "balance" of the alleged account, status, and the account number itself were FALSE, inaccurate, patently misleading, and/or **UNVERIFIED**. (Emphasis added).

121.   Defendants knew (and should have known) that the name of the "Original Creditor" being listed as "Capital One, N.A." (which is a different entity than "Capital One Bank (USA), N.A.") was FALSE, inaccurate, patently misleading, and/or **UNVERIFIED**. (Emphasis added).

122.   Plaintiff informed Defendants repeatedly and instructed Defendants to provide Plaintiff with all of the following information: (1) The source of information for the item; (2) ALL information in the consumer FILE, pursuant to 15 U.S.C. § 1681g; (3) An updated copy of the credit report upon the reinvestigation; (4) A copy of the ACDV form sent to the furnisher; (5) The description of the reinvestigation procedure pursuant to 15 U.S.C. § 1681i(a)(7).

123.   Defendants understood and knew (or should have known) that many consumers will get frustrated and "throw up their arms in disbelief" after sending multiple NOTICE OF DISPUTES regarding inaccuracies, and seeing no changes.

# METRO 2: FLIGHT OF THE PARROTS

124.   Defendants understood and know (or should know) that when they willfully and/or negligently violate the FCRA and merely "parrot" the information received from the source, they prey upon the gullibility of what Congress calls the "least sophisticated consumer."[6]

125.   Defendants understood and knew (or should have known) that the National Consumer Law Center ("NCLC") published a report in January 2009 which stated in part, quoted verbatim: "The bureaus merely "parrot" the furnishers' results, **without conducting any independent review,** with the ultimate effect that **no one ever investigates the substance of the merits of the consumer's complaint.**"   (See "AUTOMATED INJUSTICE: How a Mechanized Dispute System Frustrates Consumers Seeking To Fix Errors In Their Credit Reports, page 2).[7] (Emphasis added).

126.   Defendants know (and should know) that the report published by NCLC is publicly available, and speaks for itself.

127.   Defendants understood that the courts have noted that "CRAs may not rely on automated procedures that make only superficial inquires once the consumer has notified it that the information is disputed."   (See Apodaca v. Discover Fin. Servs., 417 F.Supp.2d 1220, 1230-31 (D.N.M. 2006)).

128.   Defendants know (and should know) that each time Plaintiff continued to send a dispute regarding the inaccuracy of the false "collections" item, it sent back the results as either "updated" and/or "verified."

---

[6] The term "least sophisticated consumer" does not imply that a person only has a high school diploma, or prefers to shop at thrift stores.  Courts use this term liberally in viewing a case from the standpoint of a person who may not be familiar with the abuses in either debt collection or credit reporting practices, in violation of the FDCPA and FCRA, respectively.

[7] https://www.nclc.org/images/pdf/pr-reports/report-automated_injustice.pdf

129. Defendants utilize the e-OSCAR® web-based, Metro 2® compliant, automated system that enables data furnishers and CRAs to create and respond to consumer credit history disputes.[8] The Metro 2 resource guide can be purchased. However, an older version is available as a matter of public record, and it speaks for itself. (See Millet v. Trulink Inc., Case No. 1:05-cv-00599-SLR, Doc 174-6).

130. Defendants know (and should know) that disputes sent by Plaintiff and received by Defendants via certified mail to their respective P.O. Boxes are scanned by machines and routed offshore. Overseas vendors, as subcontractors for the CRAs, choose from a drop-down "pick list" of Metro 2 codes, and send the dispute electronically to the furnisher.

131. Defendants have the ability to scan Plaintiff's dispute letter and attached exhibits as image files, although some call center agents claim that no documents are ever sent.

132. Defendants knew (and should have known) that its regulator, the CFPB, has addressed the issue of a "Bureau process error," describing the occurrence as follows: "a credit bureau **failed to prevent the reappearance** in a consumer's credit report of inaccurate data that was removed as a result of a consumer dispute reinvestigation." (See CFPB 2012 REPORT: Key Dimensions and Processes in the U.S. Credit Reporting System, at pg. 25, ¶ 1).[9] (Emphasis added). Defendants knew (or should have known) that such errors are common.

133. Defendants knew (and should have known) that the 2012 CFPB REPORT speaks for itself, and also includes the 29 e-OSCAR Dispute Codes in the Appendix. (See CFPB 2012 REPORT at pg. 41).

134. The Consumer Data Industry Association ("CDIA") is a trade association that represents major institutions including CRAs, and provides Metro

---

[8] e-OSCAR is an acronym that stands for "**O**nline **S**olution for **C**omplete and **A**ccurate **R**eporting. http://www.e-oscar.org/about-e-oscar.aspx

[9] https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

1   2 regulatory compliance training workshops.  The CDIA issues occasional memos
2   for CRAs, including to Defendants.

3     135.   Defendants knew (or should have known) that in 2015, the CDIA
4   issued a memo, whereby CRAs agreed **that collection agencies** were no longer
5   allowed to report any debts that were **"not the result of a contract or agreement**
6   **to pay."** (Emphasis added).  Defendants know (or should know) that the furnisher,
7   RESURGENT, is a collection agency and the servicer for LVNV.

8     136.   The CDIA memo is publicly available.[10]   Defendants know (and
9   should know) that the memo speaks for itself.

10    137.   Defendants knew (or should have known) that it was reporting an item
11  that was "not the result of a contract or agreement to pay" between Plaintiff and
12  ANY entity regarding the alleged account.   Defendants knew (or should have
13  known) **that they lacked standing to report the item** in Plaintiff's consumer
14  report or file.  (Emphasis added).

15    138.   Defendants failed to conduct a reasonable reinvestigation into
16  Plaintiff's dispute upon receipt of its multiple NOTICE OF DISPUTE letters.  The
17  entire dispute process can be described as a sideshow where "Robbie" (the robot)
18  sends the dispute, and "Polly" (the parrot) responds to the dispute as "verified."

19    139.   Plaintiff even sent his copy of the November 8, 2017 TRANSUNION
20  NOTICE OF DISPUTE to the CFPB as a complaint against TRANSUNION.
21  (CFPB Complaint Case Number 171109-2630011).   TRANSUNION knows (and
22  should know) that the complaint is on file with the CFPB, it is a matter of record,
23  and that it speaks for itself.

24    140.   TRANSUNION sent a response to the CFPB on November 27, 2017,
25  which was filled with "boilerplate" language that Plaintiff construed as nonsensical
26  jibber-jabber.   TRANSUNION sent its response claiming that the "investigation
27  was in progress" and thus did not send the actual outcome to the CFPB.

28

---

[10] https://www.cdiaonline.org/resources/furnishers-of-data-overview/changes-to-guidelines/

141. Defendants understood and knew (or should have known) that Congress amended Section 616 and Section 617 of the FCRA [§ 1681n and § 1681o] in 1996 to expand the reach from "consumer reporting agencies and users of consumer reports" to the present "any person."[11]

142. Defendants knew (or should have known) that **any person** who fails to comply with **any requirement** imposed pursuant to the FCRA with respect to **any consumer is liable to that consumer**. (Emphasis added). Defendants, and each of them, at all times relevant herein, were the principals, agents, employers, employees, and ratified, or approved of the acts or omissions alleged herein with respect to the willful and/or negligent violations of the FCRA, and were acting in the course and scope of the authority of such principals, agents, employers and employees.

143. Defendants knew (and should have known) that the information they were reporting was FALSE, patently misleading, and could not be verified after MULTIPLE dispute letters, yet willfully and/or negligently continued chose to report it as "verified." Defendants failed to maintain internal protocols to prevent such inaccuracies from appearing in the first place.

144. Plaintiff sent an AFFIDAVIT OF TRUTH via certified mail to EXPERIAN, **signed and sworn** in front of a California Notary under penalty of perjury dated June 1, 2018. (Emphasis added).

145. Plaintiff sent an AFFIDAVIT OF TRUTH via certified mail to EQUIFAX, **signed and sworn** in front of a California Notary under penalty of perjury dated June 9, 2018. (Emphasis added).

146. Plaintiff sent an AFFIDAVIT OF TRUTH via certified mail to TRANSUNION, **signed and sworn** in front of a California Notary under penalty of perjury dated July 11, 2018. (Emphasis added).

147. Defendants each received the respective affidavits, along with a cover

---

[11] See Pub. L. No. 104-208, Div. A, Sec. 2412, 110 Stat. 3009, 3009-446 (1996).

letter NOTICE of pending litigation, and supporting documents for the affidavit.

148.   Notwithstanding the powers of Mother Mary and the Holy Spirit, Defendants know (and should know) that a woman either **IS** pregnant, or **IS NOT** pregnant. (Emphasis added).

149.   EXPERIAN   considered   Plaintiff's   affidavit   and   supporting documentation as "relevant information" pursuant to the FCRA, § 1681i(a)(4).

150.   In the alternative, EXPERIAN did NOT consider Plaintiff's affidavit and supporting documentation as "relevant information" pursuant to the FCRA, § 1681i(a)(4).

151.   EQUIFAX   considered   Plaintiff's   affidavit   and   supporting documentation as "relevant information" pursuant to the FCRA, § 1681i(a)(4).

152.   In the alternative, EQUIFAX did NOT consider Plaintiff's affidavit and supporting documentation as "relevant information" pursuant to the FCRA, § 1681i(a)(4).

153.   TRANSUNION   considered   Plaintiff's   affidavit   and   supporting documentation as "relevant information" pursuant to the FCRA, § 1681i(a)(4).

154.   In the alternative, TRANSUNION did NOT consider Plaintiff's affidavit and supporting documentation as "relevant information" pursuant to the FCRA, § 1681i(a)(4).

155.   EXPERIAN knows (and should know) that Plaintiff sent a copy of the NOTICE, affidavit, and supporting documentation to Brian Cassin, CEO of EXPERIAN, ("Cassin"), also via certified mail.

156.   EQUIFAX knows (and should know) that Plaintiff sent a copy of the NOTICE, affidavit, and supporting documentation to John J. Kelley III, Chief Legal Officer of EQUIFAX ("Kelley"), also via certified mail.

157.   TRANSUNION knows (and should know) that Plaintiff sent a copy of the NOTICE, affidavit and supporting documentation to James M. Peck, President of TRANSUNION ("Peck") and Heather Russell, Chief Legal Officer of

TRANSUNION ("Russell), respectively, via first class United States postal mail.

158. Defendants know (and should know) that each of the respective NOTICE, affidavit and supporting documentation speaks for itself.

159. EXPERIAN knew (or should have known) that Cassin <u>did not dispute</u> the factual averments in the affidavit, and did not respond to Plaintiff.

160. EQUIFAX knew (or should have known) that Kelley <u>did not dispute</u> the factual averments in the affidavit, and did not respond to Plaintiff.

161. TRANSUNION knew (or should have known) that Peck <u>did not dispute</u> the factual averments in the affidavit, and did not respond to Plaintiff.

162. TRANSUNION knew (or should have known) that Russell <u>did not dispute</u> the factual averments in the affidavit, and did not respond to Plaintiff.

163. Defendants, at all times relevant, knew (or should have known) that they can conduct their own reinvestigation, and are NOT required to contact the furnisher via the ACDV to correct the inaccuracies on Plaintiff's report pursuant to the "Expedited dispute resolution" of the FCRA, § 1681i(a)(8)(A)-(C).

164. Defendants knew (and should have known) that Plaintiff did not misconstrue, misapply or take out context the content of the FCRA pursuant to § 1681i(a)(8). Defendants understood that it speaks for itself.

165. Defendants treated Plaintiff's NOTICE OF PENDING LITIGATION as just another ordinary dispute letter, and failed to remove the item <u>on their own</u>. Hence, Plaintiff's specific "opportunity to cure" by way of NOTICE to defendants **without facing litigation** was rendered moot. (Emphasis added).

166. Defendants knew (and should have known) the plain language and text of the FCRA pursuant to § 1681i(a)(5)(A), "Treatment of Inaccurate or Unverifiable Information," which states as follows, quoted verbatim: (A) In general. If, after **any reinvestigation** under paragraph (1) of **any information** disputed by a consumer, an item of the information is found to be **inaccurate or incomplete or cannot be verified**, the consumer reporting agency shall –

  (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

  (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer. (Emphasis added).

167. Defendants know (and should know) that Plaintiff does not misconstrue, misapply, or take out of context the content of the FCRA pursuant to § 1681i(a)(5)(A). Defendants understood that it speaks for itself.

168. Defendants know (and should know) that CRAs ultimately are in control of what it reports. (See Carmen Dixon-Rollins v. Experian Information Solutions, Inc., et al., Case No. 2:09-cv-00646-TJS, Document 121, Judge Savage MEMORANDUM OPINION at pg. 9, ¶ 1).

169. Defendants know (and should know) that "Failure to conduct a reasonable reinvestigation violates the FCRA. (See Cushman v. Trans Union Corp., 115 F.3d 220, 223-224 (3rd Cir. 1997). "The burden to conduct the reinvestigation is on the credit reporting agency. **It cannot be shifted back to the consumer.** Id. at 225. (Emphasis supplied).

170. EXPERIAN knew (or should have known) that upon receipt of the AFFIDAVIT OF TRUTH, someone had manipulated the data fields of "Account Balance" history for the erroneous LVNV collections item.

171. EXPERIAN knew (or should have known) that the so-called "balance" was **switched** from the "Account Balance" history field from the erroneous figure of $8,955 down to an erroneous $495, then up to an erroneous $531, **in order to create the appearance** that Plaintiff either paid down the "collections" account by way of contract or agreement, or that interest and fees were magically accumulating, BOTH of which were clearly **FALSE**. (Emphasis added).

172. EXPERIAN knew (or should have known) that a notation was added to the "Account Balance" history in Plaintiff's EXPERIAN report, which falsely represented **"The original account balance for this account was $495."** (Emphasis added).

173. Plaintiff inquired via telephone after the receipt of the "reinvestigation" results from EXPERIAN and specifically asked **who was the person** that could have made such a change to the balance history fields. The representative/agent informed Plaintiff that EXPERIAN has no way to modify that information, **"only LVNV could have done that."** (Emphasis added).

174. EXPERIAN allegedly engaged in the scheme of "burden shifting."

175. EQUIFAX knew (or should have known) that upon receipt of the AFFIDAVIT OF TRUTH, someone removed the "$0" from Plaintiff's EQUIFAX consumer report from the "Charge Off" data field, which had prior showed the "Charge-Off Balance: "$0.00."

176. EQUIFAX knew (or should have known) that a "charge-off" balance would only show a "$0" if in fact, there was NO BALANCE due at the time of "charge-off," especially for a fictional account number. According to an EQUIFAX call center agent, informed Plaintiff that "LVNV was the new creditor" and that "only LVNV could remove the item." Upon information and belief, EQUIFAX engaged in the scheme of "burden shifting."

177. TRANSUNION knew (or should have known) that upon receipt of the AFFIDAVIT OF TRUTH, the "Account Status" was <u>switched</u> from "OPEN" to "CLOSED" and claimed the item was "updated." TRANSUNION knew (or should have known) that the "Account Status" was switched again from "CLOSED" to "OPEN" and claimed it was "updated" in the reinvestigation results. Plaintiff asked a representative about the repeated switching of the status, to which the representative replied, **"We will report whatever LVNV tells us."** (Emphasis added).

178.   By way of another example, an agent from TRANSUNION, "Joseph" in the U.S., and a supervisor, advised Plaintiff get proof "on LVNV letterhead" instructing TRANSUNION to delete the item, send it as another dispute, and TRANSUNION could then remove the item.   TRANSUNION knew (or should have known) that this request was patently absurd.   Upon information and belief, TRANSUNION engaged in "burden shifting."

179.   By way of another example, an agent from EXPERIAN, specifically informed Plaintiff that EXPERIAN is not required to conduct an investigation, that EXPERIAN was just a "data houser" and if he was "not satisfied with the reinvestigation results" then he could "take it up with the furnisher."

180.   By way of another example, another agent from EXPERIAN, had earlier told Plaintiff that "LVNV is the creditor" and implied that "Plaintiff owed a debt to LVNV" which was complete poppycock.

181.   Defendants knew (or should have known) that a consumer need not accept such conclusory statements couched as "debt validation" attempts by Defendants' respective call center agents.

182.   Defendants' statements made to Plaintiff over the telephone were conclusory, hearsay, and any allegations that Plaintiff "owed a debt to LVNV" were **DENIED**. (Emphasis added).

183.   Defendants knew (or should have known) that statements made to Plaintiff were "gossamer" in nature, barely rising above the level of speculation, and resembled a house of straws built on sand.

184.   Plaintiff decided to first file suit against LVNV and RESURGENT on September 14, 2018 for violations of the FCRA (See Vora v. LVNV FUNDING, LLC et al. Case No. 8:18-cv-01674-JLS-JDE).

185.   Defendants know (or should know) that the above referenced complaint filed by Plaintiff is available on PACER, and also on CourtListener.com

as a free download in .PDF via its RECAP archive.[12]

186.   Defendants were fully informed by Plaintiff during his conversations with various call center agents that he had filed suit against the furnisher. Defendants know (or should know) that the case was settled. (See <u>Vora</u>, Doc 13).

187.   Defendants continued to report the erroneous LVNV collections item in Plaintiff's consumer report and file while the litigation was still active on the docket, despite being fully aware that Plaintiff had provided NOTICE to all three CRAs **of his intent to file suit against them separately**. (Emphasis added).

188.   Plaintiff ordered another file disclosure (i.e. credit report) pursuant to § 1681j(a) of the FCRA on or around October 7, 2018.

189.   Plaintiff did not order the report through the web, but instead sent the request by printing out the form available online and sending it via U.S. mail.[13] [14]

190.   Upon information and belief, Defendants have embedded a "mandatory arbitration clause" online through AnnualCreditReport.com. Upon information and belief, Defendants use this strategy to reduce their liability of facing suit by consumers for inaccuracies appearing on their consumer reports.

191.   Plaintiff received an updated copy of the reports. Of the "Big 3" CRAs, TRANSUNION listed the collection item as "LVNV FUNDING LLC (C/O RESURGENT CAPITAL SERVICES)."

192.   EQUIFAX listed the item only as "Lvnv Funding LLC."

193.   EXPERIAN listed the item only as "LVNV FUNDING LLC."

194.   Neither EQUIFAX nor EXPERIAN listed "RESURGENT" anywhere on Plaintiff's consumer report or file.

195.   Defendants have a written subscriber agreement with LVNV.

---

[12] Court Listener is a 501(c)(3)non-profit from Free Law Project.

 https://www.courtlistener.com/recap/

[13] https://www.annualcreditreport.com/manualRequestForm.action

[14] https://www.consumer.ftc.gov/articles/pdf-0093-annual-report-request-form.pdf

196.   In the alternative, Defendants have a written subscriber agreement with RESURGENT.

197.   Defendants generate revenues from the subscriber agreement(s).

198.   Defendants did not provide Plaintiff the copies of the ACDVs that he repeatedly requested.  Plaintiff did obtain them from "an alternate source."

199.   EXPERIAN forwarded Plaintiff's NOTICE OF DISPUTE letter dated May 22, 2017 to the furnisher.

200.   EXPERIAN requested the furnisher to "verify" Plaintiff's PII (personally identifiable information), which includes the name, birth date, address and social security number.

201.   EXPERIAN also requested the furnisher to "verify" the "$8,955 balance" as the "Current Balance," "Amount Past Due" and "Original Amt.".

202.   EXPERIAN placed a series of vertical lines in the "FCRA Relevant Information" field.   The furnisher "matched" the PII and all amounts.   Upon receipt of the returned/executed ACDV, EXPERIAN sent Plaintiff the results as "verified."

203.   EXPERIAN forwarded Plaintiff's NOTICE OF DISPUTE dated September 26, 2017 to the furnisher, with the attached exhibits.

204.   EXPERIAN requested the furnisher to "verify" the PII, and placed a series of vertical lines in the "FCRA Relevant Information" field.

205.   EXPERIAN also requested the furnisher to "verify" the "$8,955 balance" as the "Current Balance," "Amount Past Due" and "Original Amount Balance."

206.   EXPERIAN knew (or should have known) the furnisher modified the amount **for the "Original Amt." balance to "$0" (i.e. zero balance)**.   Upon receipt of the returned/executed ACDV, EXPERIAN sent Plaintiff the results "updated" as "verified."

207.   EXPERIAN forwarded Plaintiff's AFFIDAVIT OF TRUTH and

NOTICE OF PENDING LITIGATION dated <u>June 1, 2018</u> to the furnisher, with the attached exhibits, and requested the furnisher to "verify" the PII.

208.   EXPERIAN did NOT update its files to reflect the "Original Balance" as $0 in Plaintiff's file, and requested the furnisher again to "verify" the "$8,955 balance" as the "Current Balance," "Amount Past Due" and "Original Amount Balance." EXPERIAN placed a series of vertical lines in the "FCRA Relevant Information" field.

209.   EXPERIAN knew (or should have known) the furnisher DID NOT "verify" the "Original Amt." of "$8,955." Instead, the furnisher again sent the ACDV **for the "Original Amt." as "$0" (i.e. zero balance)**. (Emphasis added). Yet, upon receipt of the returned/executed ACDV, EXPERIAN sent Plaintiff the reinvestigation results "updated" as "verified."

210.   EXPERIAN willfully **failed** to conduct a reasonable reinvestigation, willfully **failed** to consider all relevant information, and willfully **failed** to DELETE the item which it knew (or should have known) was inaccurate, incomplete, or could not be verified, thereby violating and continuing to violate the FCRA, § 1681i(a)(1)(A), § 1681i(a)(4) and § 1681i(a)(5)(A). (Emphasis added).

211.   TRANSUNION forwarded Plaintiff's NOTICE OF DISPUTE letter dated <u>May 22, 2017</u> to the furnisher, and requested the furnisher to "verify" the PII. TRANSUNION did not place any information in the "FCRA Relevant Information" field.

212.   TRANSUNION also requested the furnisher to "verify" the "$8,955 balance" as the "Current Balance," "Amount Past Due," and "Original Amount Balance." The furnisher "matched" the PII and all amounts. Upon receipt of the returned/executed ACDV, TRANSUNION sent Plaintiff the reinvestigation results as "verified."

213.   TRANSUNION forwarded Plaintiff's NOTICE OF DISPUTE letter dated <u>August 2, 2017</u> to the furnisher, attached the exhibits, and requested the

furnisher to "verify" the PII.  TRANSUNION did not place any information in the "FCRA Relevant Information" field.

214.  TRANSUNION also requested the furnisher to "verify" the "$8,955 balance" as the "Current Balance," "Amount Past Due," and "Original Amount Balance" <u>again</u>.  The furnisher "matched" the PII and all amounts.  Upon receipt of the returned/executed ACDV, TRANSUNION sent Plaintiff the reinvestigation results again as "verified."

215.  TRANSUNION forwarded Plaintiff's NOTICE OF DISPUTE letter dated <u>September 20, 2017</u> to the furnisher, with the attached exhibits. TRANSUNION requested the furnisher to "verify" the PII.

216.  TRANSUNION placed **"Account deleted on 10/31/2016"** in the "FCRA Relevant Information" field.  (Emphasis added).

217.  TRANSUNION sent the data for the "Current Balance," "Amount Past Due" and "Original Amount" as "$8,955."

218.  TRANSUNION requested the furnisher to "verify" the "Original Loan Amount," "Scheduled Monthly Payment Amount," "Actual Payment Amount," "Amount Past Due," "Current Balance," and "Original Charge-off Amount."

219.  TRANSUNION knew (or should have known) that the furnisher <u>modified</u> the "Original Amt." balance **from "$8,955" to "$0" (i.e., zero balance)**. (Emphasis added).   Yet, upon receipt of the returned/executed ACDV, TRANSUNION sent the reinvestigation results to Plaintiff "updated" as "verified."

220.  Upon information and belief, "Robbie" (the robot) was having a falling out with "Polly" (the parrot).

221.  TRANSUNION forwarded Plaintiff's NOTICE OF DISPUTE letter dated <u>November 8, 2017</u> to the furnisher, and attached the exhibits.

222.  TRANSUNION requested the furnisher to "verify" the PII and all amounts.  TRANSUNION placed the word "Duplicate" in the "FCRA Relevant Information field."  TRANSUNION <u>failed to modify</u> the "Original Amount"

1   balance from $8,955 to $0, and again asked the furnisher to "verify" it as "$8,955."

2   223.   TRANSUNION knew (or should have known) that the furnisher did
3   NOT "verify" the "Original Amt." as "$8,955" and as per the PRIOR dispute, once
4   again modified the **"Original Amt." from "$8,955" to "$0."** (Emphasis added).

5   224.   TRANSUNION once again, upon receipt of the returned/executed
6   ACDV, sent Plaintiff the reinvestigation results "updated" as "verified."

7   225.   TRANSUNION sent the furnisher Plaintiff's NOTICE OF PENDING
8   LITIGATION and AFFIDAVIT OF TRUTH dated July 11, 2018, with all the
9   exhibits attached, and requested the furnisher to "verify" the PII.

10   226.   TRANSUNION requested the furnisher (again) to "verify" the
11   "Current Balance," "Amount Past Due" and "Original Balance" as "$8,955."
12   TRANSUNION knew (and should have known) that the furnisher was unable to
13   VERIFY the "Original Amt." balance.

14   227.   TRANSUNION knew (and should have known) that the furnisher sent
15   back the ACDV with the "Original Amt." shown as "$0." TRANSUNION, upon
16   receipt of the returned/executed ACDV, sent Plaintiff the reinvestigation results as
17   "updated" (i.e., "verified").

18   228.   TRANSUNION willfully **failed** to conduct a reasonable
19   reinvestigation, willfully **failed** to consider all relevant information, and willfully
20   **failed** to DELETE the item which it knew (or should have known) was inaccurate,
21   incomplete, or could not be verified,  thereby violating and continuing to violate
22   the FCRA, § 1681i(a)(1)(A), § 1681i(a)(4) and § 1681i(a)(5)(A).   (Emphasis
23   added).

24   229.   EQUIFAX sent Plaintiff's dispute letter dated May 22, 2017 to the
25   furnisher, and requested the furnisher to "verify" the PII.  EQUIFAX placed the
26   words "IMAGE ATTACH" in the "FCRA Relevant Information" field, and
27   attached the file containing Plaintiff's letter and the image of the envelope used.

28   230.   EQUIFAX requested the furnisher to "verify" the "Current Balance,"

"Amount Past Due" and "Original Amt." as "$8,955." The furnisher matched the PII and the amounts. EQUIFAX, upon receipt of the returned/executed ACDV, sent Plaintiff the reinvestigation results as "verified."

231. EQUIFAX has a "reciprocal data sharing agreement" regarding consumers' PII with TRANSUNION. (See Trans Union LLC v. Equifax Information Services, LLC et al., Case No. 1:17-cv-08546).

232. EQUIFAX received Plaintiff's NOTICE OF DISPUTE that Plaintiff sent to **TRANSUNION** dated May 22, 2017. (Emphasis added).

233. EQUIFAX requested the furnisher to "verify" Plaintiff's PII and the amounts. The "FCRA Relevant Information" field had the following, "RECEVIED FROM TUN DATED 06/08/2017." Upon information and belief, "TUN" is the abbreviation used by the EQUIFAX dispute processing agent to designate that it came from TRANSUNION.

234. EQUIFAX received the returned/executed ACDV as "verified" regarding the PII and amounts, and EQUIFAX sent the dispute reinvestigation results to Plaintiff as "verified."

235. EQUIFAX sent the furnisher Plaintiff's NOTICE OF DISPUTE dated July 24, 2017, with the attached exhibits. EQUIFAX requested the furnisher to "verify" the PII. EQUIFAX did not place any information in the "FCRA Relevant Information" field.

236. EQUIFAX sent the data for the "Amount Past Due", "Original Amt." and "Current Balance" as "$8,955." The furnisher "matched" the amounts, and upon receipt of the returned/executed ACDV, EQUIFAX sent Plaintiff the reinvestigation results as "verified."

237. EQUIFAX sent the furnisher Plaintiff's NOTICE OF PENDING LITIGATION and AFFIDAVIT OF TRUTH dated June 9, 2018, with the attached exhibits, which included the "EQUIFAX Data Furnishers Guidebook."

238. EQUIFAX requested the furnisher to "verify" the PII and the "Current

Balance", "Amount Past Due" and "Original Amt." as "$8,955." EQUIFAX knew (or should have known) that the furnisher modified the "Original Amount Balance" **from "$8,955" to "$0"**. EQUIFAX upon receipt of the returned/executed ACDV, sent Plaintiff the results of the reinvestigation as "updated" (i.e., "verified.").

239. EQUIFAX willfully **failed** to conduct a reasonable reinvestigation, willfully **failed** to consider all relevant information, and willfully **failed** to DELETE the item which it knew (or should have known) was inaccurate, incomplete, or could not be verified, thereby violating and continuing to violate the FCRA, § 1681i(a)(1)(A), § 1681i(a)(4) and § 1681i(a)(5)(A). (Emphasis added).

240. Defendants understood that the furnisher, upon receipt of the ACDVs, eventually transmitted information to defendants it was unable to verify the "Original Amount" for the collections account except for a $0 balance.

241. Defendants understood that common sense and logic dictate that there can be no "Actual Balance" **if the "Original Amount" is $0**. (Emphasis added).

242. Defendants chose to merely "parrot" the matching of Plaintiff's PII, despite MULTIPLE instances where even a cursory review would have indicated that the "Original Amount" was changed to reflect a $0 balance.

243. Defendants knowingly, willfully, intentionally and maliciously withheld information from Plaintiff regarding his file, thereby violating the FCRA, § 1681g(a)(1). Defendants understood and knew (or should have known) that **"All information"** in the **FILE** pertains to what the CRAs have in a consumer's file, NOT what the furnisher has in *their* files. (Emphasis added).

244. Defendants failed to hire properly trained personnel to explain to Plaintiff ALL information regarding his file, regardless of how and where it was stored, thereby violating the FCRA, § 1681h(c).

245. By way of example, EQUIFAX outsources its call center to the Philippines, and outsources its dispute processing to Goregaon, India. Neither the call center nor dispute processing agents are properly trained on the FCRA. The

agents are instructed to not even reveal the name of their outsourced employer.

246. EXPERIAN outsources its call center agents to Costa Rica, and many of whom are not properly trained on the FCRA.

247. By way of example, EXPERIAN call center agents do not answer questions specific to the rules of the FCRA, or regarding the specifics of the ACDVs. Some claim that documents were sent with ACDVs, others will not.

248. TRANSUNION outsources its call center agents to India, with supervisors in the U.S., and many of whom are not properly trained on the FCRA.

249. By way of example, TRANSUNION call center agents are unaware that the FCRA allows a CRA upon telephonic dispute to DELETE information that is false, inaccurate, incomplete or cannot be verified.

250. Defendants did NOT provide the specific method of their "description of the procedure" pursuant to § 1681i(a)(7) upon completion of the reinvestigation.

251. TRANSUNION placed a watermark with the logo of "TransUnion" (the ultimate parent of TRANSUNION) in Plaintiff's NOTICE OF DISPUTE letters and exhibits with the ACDV regarding the disputed LVNV collections item.

252. EQUIFAX placed a reference code on each of Plaintiff's dispute letters with the symbol "EFX," the NYSE ticker symbol of its parent company, Equifax Inc.

253. EXPERIAN knows (or should know) that it creates an image file of the envelope sent by Plaintiff for his NOTICE OF DISPUTES, indicating the amount of the postage fees paid, the date, and the certified mail tracking number.

254. Defendants know (or should know) that the CFPB has published documents to address the deficiencies in the ACDV process, and has broad oversight to promote its vision of the CRAs to "maintain and distribute data that are accurate, supplemented by an effective and efficient dispute management and resolution process for consumers." (See CFPB Supervisory Highlights Consumer

Reporting Special Edition, Issue 14, Winter 2017 at pg. 2).[15]

255.   Defendants knew (or should have known) that the CFPB mentioned that "A well-functioning dispute resolution process is critical…so that consumers do not needlessly re-dispute information."  (See Special Edition at pg. 9, ¶ 2).

256.   Defendants failed to consider the costs of its reinvestigation compared to the harm and injury incurred by Plaintiff to fix the errors on his consumer file, especially after sending a dozen NOTICE OF DISPUTES regarding the erroneous LVNV collections item over nearly 2 years.

257.   Upon information and belief, Plaintiff is NOT required to show "actual monetary loss" to allege an injury in fact.  (See Sterk v. Redbox Automated Retail, LLC, 770, F.3d 618, 621 (7th Cir. 2014).

## ARTICLE III STANDING

258.   Plaintiff reaffirms and re-alleges all preceding paragraphs as though fully stated herein.

259.   Upon information and belief, as cited by the Supreme Court, "The irreducible constitutional minimum of standing consists of three elements: injury in fact, causation and redressability."  (See Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).

260.   Plaintiff Vora has standing pursuant to Article III of the United States Constitution because he has suffered an injury in fact, the injury is traceable to the challenged conduct of Defendants' action described herein, and Plaintiff's injury in fact is likely to be resolved by a favorable judicial decision in this court.

261.   Plaintiff's injury in fact is both particular and concrete because he has suffered an invasion of a legally protected interest that is concrete, particularized, and actual or imminent.  Defendants had the willful intent to injure Plaintiff.

[15] https://www.consumerfinance.gov/policy-compliance/guidance/supervisory-highlights/

262.   By way of example, Plaintiff has spent a tremendous amount of time and energy to research Defendants, the FCRA, and has incurred expenses to fix the errors on his consumer reports and file, such as sending disputes and filing suit.

263.   Plaintiff has suffered headaches, anxiety, loss of sleep, humiliation, and other negative emotions directly caused by Defendants' actions in their willful and negligent violations of the FCRA.

264.   Defendants violated Plaintiff's statutory rights and personal interests in the handling of his credit information which was individualized to Plaintiff.

265.   Defendants knew (or should have known) that the CFPB has made it abundantly clear in a CONSENT ORDER that "Documentation and Information Available to Debt Buyers After Debt Sale will make available to a Debt Buyer, at a minimum: **"the Effective Credit Agreement."** (See In the Matter of Chase Bank, CONSENT ORDER File No. CFPB-2015-0013, at ¶ 69(a)(i)).[16]   (Emphasis added).  Defendants know (or should know) that LVNV is a "debt buyer."

266.   Defendants DELETED the PRIOR Capital One Bank tradeline that was being reported inaccurately after failing to "verify" any alleged agreement.

267.   Defendants DELETED the FAKE account number that was created by Capital One Bank itself, after failing to "verify" any alleged agreement.

268.   Defendants refused to remove the SAME exact alleged account number when it was being furnished by LVNV, resulting in Plaintiff filing suit against the furnishers, and now brings this suit against Defendants.

269.   EQUIFAX has argued to a jury that "taking corrective steps only after civil action is filed complied with its 'policy'." (See Miller v. Equifax Info. Servs. LLC, Case No: 3:11-cv-01231-BR, Trial Transcript 530).[17]

270.   Defendants chose to "park" the same alleged account number that it had already DELETED, claiming it was "verified" as being "reported accurately."

---

[16] Plaintiff respectfully requests this Court to take judicial notice of the CFPB consent order.

[17] The jury in Miller awarded the Plaintiff $18,400,000 in punitive damages.

271.   Defendants know (and should know) that the term "park" is an industry term used when the CRAs willfully violate the FCRA by reporting a false balance and/or false item, even when they know the information is FALSE. (See Rogers v. Discover Bank, Case No. 2:13-cv-01124-HGD, Doc 1 at ¶ 57-59).

272.   Defendants know (or should know) that "The threat of punitive damages under § 1681n of the FCRA is the primary factor deterring erroneous reporting by the credit reporting industry." (See Brim v. Midland Cred. Mgmt., 795 F. Supp. 2d 1255, 1265 (N.D. Ala. 2011).

273.   TRANSUNION received an Automated Universal Data Form ("AUD"), a form used by data furnishers to report "out-of-cycle" updates to CRAs. The form is dated December 5, 2018, Control # 92181305, and with instructions to DELETE the LVNV item.  Upon information and belief, the item was deleted.

274.   EXPERIAN also received an AUD from the furnisher on or around the same time, with instructions to DELETE the LVNV item.  Upon information and belief, the item was deleted.

275.   EQUIFAX also received an AUD from the furnisher on or around the same time with the same instructions to DELETE the LVNV item.   Upon information and belief, the LVNV item was deleted.

276.   Defendants understood that they were still subject to suit.

277.   Defendants know (and should know) that credit reporting is not a game like the original Parker Brother's MONOPOLY®.  There is no "Get Out of 'FCRA' Free Card" for violations of the statute.

278.   Plaintiff is within the statute of limitations pursuant to the FCRA, § 1681p, as Plaintiff first discovered the conduct by EXPERIAN regarding the impermissible pull of his consumer information dated March 16, 2017.  Plaintiff first discovered the reporting of the erroneous LVNV collections item by Defendants on or around May 10, 2017.  Therefore, Plaintiff's claims are not time-barred for the specific violations of the FCRA pertaining to Defendants.

279.   Upon information and belief, Defendants have made an objectively unreasonable reading of the FCRA, which has gone far beyond a mere careless reading of the statute.

280.   Defendants operate by way of deception, and their actions were in willful and reckless disregard of the FCRA.

281.   Plaintiff extended ALL courtesies to Defendants, and has met all conditions precedent prior to the filing of this suit, including providing NOTICE via certified mail to their respective agents, officers and their corporate counsel, yet Defendants' actions **smacked of recidivism**. (Emphasis added).

282.   Upon information and belief, Defendants knew (or should have known) that Plaintiff's courtesies even extended to Defendants' respective fictional agents, "Robbie" (the robot), and "Polly" (the parrot).

283.   Defendants had ample opportunity to rectify its actions before he filed suit against LVNV and RESURGENT, thus making any claim of "inadvertence" or "bona fide error" defense more suitable for the chopping block.

284.   Upon information and belief, Justice Alito of the United States Supreme Court wrote the following, "The FCRA also provides that "[a]ny person who willfully violates fails to comply with any requirement [of the Act] with respect to any [individual] is liable to that individual, for, among other things, either "actual damages" or statutory damages of $100 to $1,000 **per violation**, costs of the action and attorney's fees, and possibly punitive damages § 1681n(a). (See Spokeo, Inc. v. Robins, 578 U.S._(2016) at pg. 3). (Emphasis supplied).

285.   Defendants know (and should know) that the FCRA is not a "strict liability" statute such as the FDCPA, where a plaintiff may recover actual damages, but courts have consistently held that "additional damages" are limited to $1,000 **per proceeding** and not $1,000 **per violation**. (See Wright v. Finance Servs. Of Norwalk, Inc., 22 F.3d 647-650-651 (6th Cir. 1994). (additional damages limited to $1,000 even though defendant committed fourteen violations).

(Emphasis added).

286.  By way of example, if a person parks her car in front of the Ronald Reagan Federal Building at an expired meter <u>five times</u>, then that person will likely get FIVE tickets, resulting in FIVE separate fines, not <u>one</u> ticket, and not <u>one</u> fine.

287.  The CFPB publishes "Consumer Response Annual Reports" which compiles the data concerning complaints it receives from consumers, and sends to Congress pursuant to § 1681i(e).

288.  Defendants know (and should know) that each Annual Response Report is publicly available.  The most recent 2017 CFPB report speaks for itself.[18]

289.  By way of example, regarding credit inquires, the CFPB stated "Consumers complained that they were frustrated with the consumer reporting companies' responses to their concerns about these credit inquires."  (See 2017 CFPB Annual Response Report, pg. 14, ¶ 3).

290.  By way of example, regarding prior disputes, the CFPB stated "Consumers sometimes mentioned **having already attempted to resolve** the inaccuracies by contacting a consumer reporting company and submitting a dispute..." (See 2017 Annual Response Report, pg. 14, ¶ 1).  (Emphasis added).

291.  If the collective chicanery by Defendants were fully known by the public, **<u>it would shock the moral conscience of any reasonable man or woman</u>**. (Emphasis added).

292.  Guided by the provisions of <u>Spokeo</u>, the CFPB findings, prior case law, the plain reading of the statute, and after making exhaustive attempts to get Defendants to accept and acknowledge the deficiencies in their "reinvestigation" procedures, Plaintiff now brings forth his causes of actions against Defendants, both separately and collectively as noted herein, for willful and negligent violations of Federal Law, 15 U.S.C. § 1681 et seq.

---

[18] https://www.consumerfinance.gov/data-research/research-reports/2017-consumer-response-annual-report/

## CAUSES OF ACTION

## COUNT I – VIOLATION OF THE FCRA, 15 U.S.C. § 1681b

### Against EXPERIAN

293.  Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

294.  On or around <u>March 16, 2017</u>, EXPERIAN allowed RESURGENT to access Plaintiff's consumer report with EXPERIAN, without any permissible purpose as defined in the FCRA, § 1681b, "Permissible purpose of consumer reports."

295.  EXPERIAN violated § 1681b by NOT having any purpose to furnish a consumer report to RESURGENT pursuant to § 1681b(a)(1), § 1681b(a)(2), § 1681b(a)(3)(A)-(G), § 1681b(a)(4)(A)-(D), § 1681b(a)(5) and § 1681b(a)(6).

296.  EXPERIAN knew (or should have known) that access to Plaintiff's EXPERIAN report was private, confidential information, and that EXPERIAN lacked standing to furnish such report and/or ANY data contained therein.

297.  EXPERIAN had no lawful purpose to provide access of such report or data.  The action by EXPERIAN was willful, and caused damage to Plaintiff, thereby in violation of § 1681n.  Plaintiff is entitled to actual damages or statutory damages.  Plaintiff is entitled to punitive damages and costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT II – VIOLATION OF THE FCRA, 15 U.S.C. § 1681b

### Against EXPERIAN

298.  Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

299.  On or around <u>April 25, 2017</u>, EXPERIAN allowed RESURGENT to access Plaintiff's consumer report with EXPERIAN, without any permissible purpose as defined in the FCRA, § 1681b, "Permissible purpose of consumer

reports."

300.   EXPERIAN violated § 1681b by NOT having any purpose to furnish a consumer report to RESURGENT pursuant to § 1681b(a)(1), § 1681b(a)(2), § 1681b(a)(3)(A)-(G), § 1681b(a)(4)(A)-(D), § 1681b(a)(5) and § 1681b(a)(6).

301.   EXPERIAN knew (or should have known) that access to Plaintiff's EXPERIAN report was private, confidential information, and that EXPERIAN lacked standing to furnish such report and/or ANY data contained therein.

302.   EXPERIAN had no lawful purpose to furnish such report.  The action by EXPERIAN was willful, and caused damage to Plaintiff, thereby in violation of § 1681n.  Plaintiff is entitled to actual damages or statutory damages.  Plaintiff is entitled to punitive damages and costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT III – VIOLATION OF THE FCRA, 15 U.S.C. § 1681b
### Against EXPERIAN

303.   Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

304.   On or around October 24, 2017, EXPERIAN allowed RESURGENT to access Plaintiff's consumer report with EXPERIAN, without any permissible purpose as defined in the FCRA, § 1681b, "Permissible purpose of consumer reports."

305.   EXPERIAN violated § 1681b by NOT having any purpose to furnish a consumer report to RESURGENT pursuant to § 1681b(a)(1), § 1681b(a)(2), § 1681b(a)(3)(A)-(G), § 1681b(a)(4)(A)-(D), § 1681b(a)(5) and § 1681b(a)(6).

306.   EXPERIAN knew (or should have known) that access to Plaintiff's EXPERIAN report was private, confidential information, and that EXPERIAN lacked standing to furnish such report and/or ANY data contained therein.

307.   EXPERIAN had no lawful purpose to furnish such report.  The action

by EXPERIAN was willful, and caused damage to Plaintiff, thereby in violation of § 1681n.  Plaintiff is entitled to actual damages or statutory damages.  Plaintiff is entitled to punitive damages and costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT IV – VIOLATION OF THE FCRA § 1681i

### Requirements Relating to Reinsertion of Previously Deleted Material

### Against Defendants TRANSUNION, EQUIFAX, EXPERIAN

308.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

309.   TRANSUNION failed to provide "Notice to consumer" pursuant to § 1681i(a)(5)(B)(ii) regarding the SAME alleged account number that was already disputed and <u>deleted</u> on or around October 31, 2016, and reappeared in Plaintiff's consumer report and file on around May 10, 2017.   TRANSUNION was well aware of Plaintiff's prior disputes.

310.   EQUIFAX failed to provide "Notice to consumer" pursuant to § 1681i(a)(5)(B)(ii) regarding the SAME alleged account number that was already disputed and <u>deleted</u> on or around March 10, 2017 and reappeared in Plaintiff's consumer report and file on around May 10, 2017.   EQUIFAX was well aware of Plaintiff's prior disputes.

311.   EXPERIAN failed to provide "Notice to consumer" pursuant to § 1681i(a)(5)(B)(ii) regarding the SAME alleged account number that was already disputed and <u>deleted</u> on or around March 10, 2017 and reappeared in Plaintiff's consumer report and file on around May 10, 2017.   EXPERIAN was well aware of Plaintiff's prior disputes.

312.   Defendants were required to provide NOTICE "in writing not later than 5 business days after the reinsertion" regardless of who furnished it.

313.   Defendants failed to maintain reasonable procedures to prevent

reappearance in violation of the FCRA, § 1681i(a)(C).

314.   Defendants' actions were negligent, pursuant to § 1681o.

315.   As a result of Defendants' actions, Plaintiff was damaged.

316.   Plaintiff is entitled to actual damages, costs of the action pursuant to § 1681o, and for reasonable attorney's fees (if applicable).

## COUNT V – VIOLATIONS OF THE FCRA § 1681i(a)
### Against EQUIFAX

317.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

318.   Plaintiff sent NOTICE OF DISPUTE to EQUIFAX dated May 22, 2017 regarding the inaccurate LVNV collections item via certified mail.

319.   EQUIFAX knew (or should have known) that the item in dispute was false, inaccurate, patently misleading and/or could not be verified.

320.   EQUIFAX violated the FCRA and failed to conduct a reasonable reinvestigation pursuant to § 1681i(a)(1)(A).

321.   EQUIFAX violated the FCRA pursuant to § 1681i(a)(4) and failed to review and consider all relevant information submitted by Plaintiff.

322.   EQUIFAX violated the FCRA pursuant to § 1681i(a)(5)(A) and failed to promptly delete the item.

323.   EQUIFAX's violations were willful, and Plaintiff was damaged.

324.   Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT VI – VIOLATIONS OF THE FCRA § 1681i(a)
### Against EQUIFAX

325.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

326.   Plaintiff sent NOTICE OF DISPUTE to EQUIFAX dated <u>July 24, 2017</u> regarding the inaccurate LVNV collections item via certified mail.

327.   EQUIFAX knew (or should have known) that the item in dispute was false, inaccurate, patently misleading and/or could not be verified.

328.   EQUIFAX violated the FCRA and failed to conduct a reasonable reinvestigation pursuant to § 1681i(a)(1)(A).

329.   EQUIFAX violated the FCRA pursuant to § 1681i(a)(4) and failed to review and consider all relevant information submitted by Plaintiff.

330.   EQUIFAX violated the FCRA pursuant to § 1681i(a)(5)(A) and failed to promptly delete the item.

331.   EQUIFAX violated the FCRA pursuant to § 1681i(a)(7) and failed to provide the specific description of the reinvestigation procedure.

332.   EQUIFAX's violations were willful, and Plaintiff was damaged.

333.   Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT VII – VIOLATIONS OF THE FCRA § 1681i(a)
### Against EQUIFAX

334.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

335.   Plaintiff sent a NOTICE OF PENDING LITIGATION and AFFIDAVIT OF TRUTH to EQUIFAX dated <u>June 9, 2018</u>  regarding the inaccurate LVNV collections item via certified mail.

336.   EQUIFAX knew (or should have known) that the item in dispute was false, inaccurate, patently misleading and/or could not be verified.

337.   EQUIFAX violated the FCRA and failed to conduct a reasonable reinvestigation pursuant to § 1681i(a)(1)(A).

338.  EQUIFAX violated the FCRA pursuant to § 1681i(a)(4) and failed to review and consider all relevant information submitted by Plaintiff.

339.  EQUIFAX violated the FCRA pursuant to § 1681i(a)(5)(A) and failed to promptly delete the item.

340.  EQUIFAX's violations were willful, and Plaintiff was damaged.

341.  Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus cost of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT VIII – VIOLATIONS OF THE FCRA § 1681i(a)
### Against EXPERIAN

342.  Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

343.  Plaintiff sent NOTICE OF DISPUTE to EXPERIAN dated May 22, 2017 regarding the inaccurate LVNV collections item via certified mail.

344.  EXPERIAN knew (or should have known) that the item in dispute was false, inaccurate, patently misleading and/or could not be verified.

345.  EXPERIAN violated the FCRA and failed to conduct a reasonable reinvestigation pursuant to § 1681i(a)(1)(A).

346.  EXPERIAN violated the FCRA pursuant to § 1681i(a)(4) and failed to review and consider all relevant information submitted by Plaintiff.

347.  EXPERIAN violated the FCRA pursuant to § 1681i(a)(5)(A) and failed to promptly delete the item.

348.  EXPERIAN's violations were willful, and Plaintiff was damaged.

349.  Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT IX – VIOLATIONS OF THE FCRA § 1681i(a)
### Against EXPERIAN

350.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

351.   Plaintiff sent NOTICE OF DISPUTE to EXPERIAN dated <u>September 26, 2017</u> regarding the inaccurate LVNV collections item via certified mail.

352.   EXPERIAN knew (or should have known) that the item in dispute was false, inaccurate, patently misleading and/or could not be verified.

353.   EXPERIAN violated the FCRA and failed to conduct a reasonable reinvestigation pursuant to § 1681i(a)(1)(A).

354.   EXPERIAN violated the FCRA pursuant to § 1681i(a)(4) and failed to review and consider all relevant information submitted by Plaintiff.

355.   EXPERIAN violated the FCRA pursuant to § 1681i(a)(5)(A) and failed to promptly delete the item.

356.   EXPERIAN's violations were willful, and Plaintiff was damaged.

357.   Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT X – VIOLATIONS OF THE FCRA § 1681i(a)
### Against EXPERIAN

358.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

359.   Plaintiff sent a NOTICE OF PENDING LITIGATION and AFFIDAVIT OF TRUTH to EXPERIAN dated <u>June 1, 2018</u>  regarding the inaccurate LVNV collections item via certified mail.

360.   EXPERIAN knew (or should have known) that the item in dispute was false, inaccurate, patently misleading and/or could not be verified.

361.   EXPERIAN violated the FCRA and failed to conduct a reasonable reinvestigation pursuant to § 1681i(a)(1)(A).

362.   EXPERIAN violated the FCRA pursuant to § 1681i(a)(4) and failed to review and consider all relevant information submitted by Plaintiff.

363.   EXPERIAN violated the FCRA pursuant to § 1681i(a)(5)(A) and failed to promptly delete the item.

364.   EXPERIAN's violations were willful, and Plaintiff was damaged.

365.   In the alternative, at a bare minimum, EXPERIAN's violations were negligent, and Plaintiff was damaged.

366.   Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT XI – VIOLATIONS OF THE FCRA § 1681i
### Against TRANSUNION

367.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

368.   Plaintiff sent NOTICE OF DISPUTE to TRANSUNION dated May 22, 2017 regarding the inaccurate LVNV collections item via certified mail.

369.   TRANSUNION knew (or should have known) that the item in dispute was false, inaccurate, patently misleading and/or could not be verified.

370.   TRANSUNION violated the FCRA and failed to conduct a reasonable reinvestigation pursuant to § 1681i(a)(1)(A).

371.   TRANSUNION violated the FCRA pursuant to § 1681i(a)(4) and failed to review and consider all relevant information submitted by Plaintiff.

372.   TRANSUNION violated the FCRA pursuant to § 1681i(a)(5)(A) and failed to promptly delete the item.

373.   TRANSUNION's violations were willful, and Plaintiff was damaged.

374.   Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT XII – VIOLATION OF THE FCRA § 1681i
### Against TRANSUNION

375.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

376.   Plaintiff sent NOTICE OF DISPUTE to TRANSUNION dated <u>August 2, 2017</u> regarding the inaccurate LVNV collections item via certified mail.

377.   TRANSUNION knew (or should have known) that the item in dispute was false, inaccurate, patently misleading and/or could not be verified.

378.   TRANSUNION violated the FCRA and failed to conduct a reasonable reinvestigation pursuant to § 1681i(a)(1)(A).

379.   TRANSUNION violated the FCRA pursuant to § 1681i(a)(4) and failed to review and consider all relevant information submitted by Plaintiff.

380.   TRANSUNION violated the FCRA pursuant to § 1681i(a)(5)(A) and failed to promptly delete the item.

381.   TRANSUNION violated the FCRA pursuant to § 1681i(a)(7) and failed to provide the specific description of the reinvestigation procedure.

382.   TRANSUNION's violations were willful, and Plaintiff was damaged.

383.   Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT XIII – VIOLATION OF THE FCRA § 1681i
### Against TRANSUNION

384.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

385. Plaintiff sent NOTICE OF DISPUTE to TRANSUNION dated September 20, 2017 regarding the inaccurate LVNV collections item via certified mail.

386. TRANSUNION knew (or should have known) that the item in dispute was false, inaccurate, patently misleading and/or could not be verified.

387. TRANSUNION violated the FCRA and failed to conduct a reasonable reinvestigation pursuant to § 1681i(a)(1)(A).

388. TRANSUNION violated the FCRA pursuant to § 1681i(a)(4) and failed to review and consider all relevant information submitted by Plaintiff.

389. TRANSUNION violated the FCRA pursuant to § 1681i(a)(5)(A) and failed to promptly delete the item.

390. TRANSUNION's violations were willful, and Plaintiff was damaged. 315. Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus costs of action. Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT XIV – VIOLATION OF THE FCRA § 1681i
### Against TRANSUNION

391. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

392. Plaintiff sent NOTICE OF DISPUTE to TRANSUNION dated November 8, 2017 regarding the inaccurate LVNV collections item via REGISTERED MAIL, with a copy sent as a complaint against TRANSUNION with the CFPB.

393. TRANSUNION knew (or should have known) that the item in dispute was false, inaccurate, patently misleading and/or could not be verified.

394. TRANSUNION violated the FCRA and failed to conduct a reasonable reinvestigation pursuant to § 1681i(a)(1)(A).

395.   TRANSUNION violated the FCRA pursuant to § 1681i(a)(4) and failed to review and consider all relevant information submitted by Plaintiff.

396.   TRANSUNION violated the FCRA pursuant to § 1681i(a)(5)(A) and failed to promptly delete the item.

397.   TRANSUNION's violations were willful, and Plaintiff was damaged.

398.   Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT XV – VIOLATION OF THE FCRA § 1681i
### Against TRANSUNION

399.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

400.   Plaintiff sent a NOTICE OF PENDING LITIGATION and AFFIDAVIT OF TRUTH to TRANSUNION dated July 11, 2018  regarding the inaccurate LVNV collections item via certified mail.

401.   TRANSUNION knew (or should have known) that the item in dispute was false, inaccurate, patently misleading and/or could not be verified.

402.   TRANSUNION violated the FCRA and failed to conduct a reasonable reinvestigation pursuant to § 1681i(a)(1)(A).

403.   TRANSUNION violated the FCRA pursuant to § 1681i(a)(4) and failed to review and consider all relevant information submitted by Plaintiff.

404.   TRANSUNION violated the FCRA pursuant to § 1681i(a)(5)(A) and failed to promptly delete the item.

405.   TRANSUNION's violations were willful, and Plaintiff was damaged.

406.   Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT XVI – VIOLATIONS OF THE FCRA § 1681g

### Against Defendants EQUIFAX, EXPERIAN, TRANSUNION

407.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

408.   Plaintiff ordered his annual file disclosure pursuant to § 1681j(a) from Defendants on or around October 7, 2018 via U.S. postal mail.

409.   EQUIFAX failed to send ALL information in the file pursuant to § 1681g(a)(1), including, but not limited to, the PHYSICAL VERIFICATION of all documentation, the ACDVs and Metro 2 codes used by EQUIFAX to process Plaintiff's disputes regarding the erroneous LVNV collections account.

410.   EXPERIAN failed to send ALL information in the file pursuant to § 1681g(a)(1), including, but not limited to, the PHYSICAL VERIFICATION of all documentation, the ACDVs and Metro 2 codes used by EXPERIAN to process Plaintiff's disputes regarding the erroneous LVNV collections account.

411.   TRANSUNION failed to send ALL information in the file pursuant to §1681g(a)(1), including, but not limited to, the PHYSICAL VERIFICATION of all documentation, the ACDVs and Metro 2 codes used by TRANSUNION to process Plaintiff's disputes regarding the erroneous LVNV collections account.

412.   EQUIFAX failed to disclose in the file that "RESURGENT" is the servicer for LVNV.

413.   EXPERIAN failed to disclose in the file that "RESURGENT" is the servicer for LVNV.

414.   Defendants' actions were willful, and Plaintiff was damaged.

415.   Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## COUNT XVII – VIOLATION OF THE FCRA § 1681h(c)

### Against Defendants EQUIFAX, EXPERIAN, TRANSUNION

416.  Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

417.  EQUIFAX failed to provide Plaintiff with trained personnel to explain the reinvestigation results being furnished to him, including, but not limited to, how EQUIFAX made the determination that the erroneous LVNV collections account was "verified."

418.  EXPERIAN failed to provide Plaintiff with trained personnel to explain the reinvestigation results being furnished to him, including, but not limited to, how EXPERIAN made the determination that the erroneous LVNV collections account was "verified."

419.  TRANSUNION failed to provide Plaintiff with trained personnel to explain the reinvestigation results being furnished to him, including, but not limited to, how TRANSUNION made the determination that the erroneous LVNV collections account was "verified."

420.  Defendants attempted to bamboozle Plaintiff into accepting a false reality that CRAs have neither the ability nor the authority to remove inaccurate, incomplete or information that cannot be verified, unless they are instructed to do so by the furnisher.  Merriam Webster's dictionary defines the word "bamboozle" as a transitive verb meaning **"to deceive by underhanded methods: DUPE, HOODWINK; to confuse, frustrate, or throw off thoroughly or completely."** (Emphasis added).

421.  Defendants' actions were willful, and Plaintiff was damaged.

423.  Plaintiff is entitled to actual or statutory damages pursuant to § 1681n, and for punitive damages plus costs of action.  Plaintiff is entitled to reasonable attorney's fees (if applicable).

## **TRIAL BY JURY DEMANDED**

424.    Plaintiff hereby seeks discovery on all matters, including any potential amended complaint, and demands jury trial on all claims subject to a trier of fact. The court "may not make credibility determinations or weigh the evidence," because those are "jury functions, not those of a judge." (See Zellner v. Summerlin, 494 F.3d 344,370 (2nd Cir. 2007). (See Milfort v. Prevete, 3 F.Supp.3d 14 (2014)). (See also Wallberry v. Trustees of Ind. Univ., No. 1:04-cv-848, 2006 WL 2051283, at *1 (S.D. Ind. July 20, 2006)).

## **PRAYER FOR RELIEF**

425.    WHEREFORE, Plaintiff prays for the following judgment entered against Defendants as follows:

426.   For counts I, II and III against EXPERIAN: actual damages or statutory damages pursuant to § 1681n(a)(1)(A) for each count; such amount of punitive damages as the court may allow, pursuant to § 1681n(a)(2); costs pursuant to § 1681n(a)(3), and reasonable attorney's fees (if applicable).[19]

427.    For count IV against TRANSUNION, EQUIFAX, EXPERIAN: actual damages pursuant to § 1681o(a)(1) for each defendant; costs pursuant to § 1681o(a)(2), and reasonable attorney's fees (if applicable).

428.    For counts V, VI, and VII against EQUIFAX: actual damages or statutory damages pursuant to § 1681n(a)(1)(A) for each count; such amount of punitive damages as the court may allow, pursuant to § 1681n(a)(2); costs pursuant

---

[19] (See Vaksman v. C.I.R. 54 F. App'x 592 (5th Cir. 2002). ("As a pro se litigant, [the petitioner] is not entitled to attorney['s] fees because, quite simply, he did not actually 'pay' or 'incur' attorney['s] fees."). The FCRA contains a "fee shifting" provision, and Plaintiff shall request attorney's fees if represented by counsel, hence "if applicable,"

to § 1681n(a)(3), and reasonable attorney's fees (if applicable).

429.  For counts VIII, IX, and X against EXPERIAN: actual damages or statutory damages pursuant to § 1681n(a)(1)(A) for each count; such amount of punitive damages as the court may allow, pursuant to § 1681n(a)(2); costs pursuant to § 1681n(a)(3), and reasonable attorney's fees (if applicable).

430.  For counts XI, XII, XIII, XIV, and XV against TRANSUNION: actual damages or statutory damages pursuant to § 1681n(a)(1)(A) for each count; such amount of punitive damages as the court may allow, pursuant to § 1681n(a)(2); costs pursuant to § 1681n(a)(3), and reasonable attorney's fees (if applicable).

431.  For counts XVI against EQUIFAX, EXPERIAN, TRANSUNION: actual damages or statutory damages pursuant to § 1681n(a)(1)(A) for each defendant; such amount of punitive damages as the court may allow, pursuant to § 1681n(a)(2); costs pursuant to § 1681n(a)(3), and reasonable attorney's fees (if applicable).

432.  For counts XVII against EQUIFAX, EXPERIAN, TRANSUNION: actual damages or statutory damages pursuant to § 1681n(a)(1)(A) for each defendant; such amount of punitive damages as the court may allow, pursuant to § 1681n(a)(2); costs pursuant to § 1681n(a)(3), and reasonable attorney's fees (if applicable).

433.  For all counts: any other relief that the court may deem just and proper against EQUIFAX, EXPERIAN, TRANSUNION.

Respectfully submitted this day of ___February 14, 2019_____

1

2          By: Pritish Vora, Pro Se

3

4

5

6          Pritish Vora

7          27758 Santa Marg. Pkwy, #530

8          Mission Viejo, CA  92691

9          (949) 292-8359

10         pvora2112@gmail.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## AFFIDAVIT IN SUPPORT OF COMPLAINT

1.     I hereby certify that I am the named Plaintiff for the above referenced COMPLAINT, I am over 18, and I can competently testify if called as a witness to the best of my personal knowledge of the facts, except for statements made "upon information and belief," those which require discovery, or any deemed whimsical.

2.     I sent to EXPERIAN an "OPPORTUNITY TO CURE" NOTICE on June 1, 2018 via certified mail, which stated in part, "Please DELETE the following UNVERIFIED item immediately: LVNV FUNDING, LLC." I attached an "AFFIDAVIT OF TRUTH" and supporting documentation as exhibits.

3.     I sent to EQUIFAX an "OPPORTUNITY TO CURE" NOTICE on June 9, 2018 via certified mail, which stated in part, "If the item is not deleted pursuant to dispute rules, then I will invoke recourse through the filing of suit in Federal Court."  I attached an "AFFIDAVIT OF TRUTH" and supporting documentation as exhibits.

4.     I sent to TRANSUNION an "OPPORTUNITY TO CURE WITH EXPEDITED DISPUTE RESOLUTION" NOTICE via certified mail on July 11, 2018, which stated in part, "Dear TRANSUNION, YOU ARE GOING TO BE SUED IN FEDERAL COURT." I attached an "AFFIDAVIT OF TRUTH" and supporting documentation as exhibits.

5.     I filed suit against LVNV FUNDING, LLC and RESURGENT CAPITAL SERVICES, LP on September 14, 2018 in this district (Vora v. LVNV FUNDING, LLC et. al. 8:18-cv-01674-JLS-JDEx).

6.     I filed a joint stipulation for dismissal with prejudice against all claims against the parties in the above referenced suit on December 4, 2018.

7.     I now bring this suit against the named Defendants EQUIFAX, EXPERIAN and TRANSUNION after my prior attempts to resolve the dispute amicably with Defendants "echoed with The Sound of Silence."

_Pruth Vora_

_Pritish Vora_

_Feb. 14, 2019_

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Orange_
Subscribed and sworn to (or affirmed) before me on this _14th_ day
of _February_, 20 _19_, by _Pritish Vora_
_____, proved to me on the basis
of satisfactory evidence to be the person(s) who appeared before me.

Signature _Susanne H. Ogera_          (Seal)

SUSANNE HELGA FERREIRA
Notary Public - California
Orange County
Commission # 2152915
My Comm. Expires May 13, 2020

Affidavit in Support
of Complaint

COMPLAINT FOR DAMAGES